The first case is United States v. Holena. Is that the way to pronounce it? Holena. Holena. Sir, would you like to reserve some time? Yes. May it please the court, Frederick Goldrick. I'm an assistant federal public defender in the Middle District of Pennsylvania. I'd like to reserve two minutes of my time for rebuttal. Very well. Go ahead, sir. Addressing initially the lifetime computer use and possession ban, we believe it was overbroad, this restriction, for a number of reasons. Before we get to the merits of that, can we talk about the waiver issue that the government raises? In its brief, they argue that because of waiver, I think they put this on page three of their supplemental briefing, because of the waiver, we don't get to the constitutional issue of the merits? Yes, we can address that first. The court asked questions about the applicability of Packingham. Oh, we won't talk about that, but you would agree that if there's a waiver problem, that would be a short discussion. It would be a very short discussion, but we don't think there is a waiver problem, and here's why. The standard under Section 3583 includes whether the restriction unnecessarily infringes on an individual's liberty interest. The First Amendment, free speech, free association, that's a liberty interest. That's one of the fundamental ones. The court's cases, Volcker and before that Crandon, all focused on these First Amendment issues surrounding internet usage, computer bans, or computer limitations, and so it's simply encompassed within the liberty interest that's a part of the statutory standard. Now, it's true that Packingham brought that to the fore, but this court's decision, but it didn't represent a sea change or alter the landscape. This court in a couple of cases discussed at some length the applicability of the First Amendment. So the fact that we raised the argument under the statutory standard doesn't mean we waived any argument. What other liberty interests would there be in connection with an internet? Well, I guess the argument is if it wasn't, how would you know there's a constitutional claim unless it's actually articulated, and the failure to articulate it is the issue. Well, the failure to articulate it is an issue to the extent that we didn't identify any liberty interest, but the court's case law has identified it. Volcker identified it. Crandon identified it. It's the only one that would actually apply in the context of using the internet or having a computer, your ability to make speech or receive speech or associate with other individuals. So we don't believe that. Go to the merits then. Addressing the computer use ban or restriction, we believe it's a law for a couple of reasons. One, the guideline itself talks in terms of limiting internet access or computer use. It doesn't represent a prohibition. How should the sentence have been structured? Well, the court should have done or could have done, I should say, a number of things. First of all, it's concerned with the deterrence or protecting the public aspects of the case could have been addressed by simply, A, not have been permitted to visit such as chat rooms. But assuming that was unwieldy, they could have had some sort of notification requirement that perhaps he gives 12 hours or 24 hours notice or they have some sort of regular schedule he's working that's going to involve a computer. That would have aided the use of the monitoring and searching conditions that were already imposed. And if either of those were unwieldy, then perhaps the original restriction, which is one where the probation office would have to basically approve of any internet usage. There's a problem with that restriction. Of course, it involves a bit of Article III delegation to the probation office, but assuming that that was appropriate, that would have been a lesser ban. Or if none of those worked, the court could have simply said a five-year, three-year, two-year, one-year ban completely and it would still have been enough. How does the court go about that? So obviously our jurisprudence has in different instances approved of a three-, five-, and ten-year ban. It seems after Packingham and some of our other cases, Robinson, et cetera, that a lifetime ban is sort of off the table, at least that would be the argument put forth. Government might disagree with that. So how do you go about, how would we go about if we agreed with you in writing that? What advice would we give to the district courts? I think the advice would be that there are a number of other options short of a lifetime ban that might be appropriate in identifying whatever one fits the particular facts and circumstances of Mr. Halena might be best in connection with what sort of employment he's at. I mean, if he's working as a ditch digger, that's one thing, but if he's working at a place that has a computer and he's supposed to access it every now and then to do his job, that might be another thing. But they're all sort of fact-dependent, and the court would actually in the first instance have to make a determination based on what's he doing and what he needs the computer for. How about the fact that he's, at least within his individual context, a recidivist in violating the conditions of supervised release? Pretty straightforwardly, I don't think you'd substantially argue that they weren't violations. So assuming those facts, would a 10-year ban, I think that was Thielman, or even the 20-year ban that Albertson rejected, would that make sense based on the recidivism? That's what we're trying to grapple with. I don't think an outbreak ban would ever really make sense in this day and age. But some sort of conditional ban like existed in Miller and Crandon and Volcker where the probation department has authority to bless, so to speak, whatever Internet usage you need for purposes of work or in general. Are you suggesting a short-term ban would not be appropriate? A short-term ban would be appropriate, particularly in the context of allowing the probation office either notice or approval of what you're doing on the Internet. And a lot of this is actually taken care of by virtue of the monitoring and searching conditions that they have. So my concern is, first of all, some of your proposals have a bunch of moving parts in them. Trying to go and get the probation office to react on 12 or 24 hours notice, I'm not at all sure that that's feasible. I'm not saying a district court couldn't find otherwise, but I'm hesitant to tell a district court it has to do that. And the other thing is there are some things in some of the cases, like the Second Circuit cases where the monitoring of those filtering software is not foolproof. It can be evaded. So that's a risk. It's one of the risks we need to balance against it. But it seems to me you're asking us to parse things awfully finely. If we can't take those risks into account, keeping them away for a substantial period of time from a number of places and not just saying, well, the probation office can swoop in and tell him not to or keep a close eye on what his logs are on the Internet and stop him when he goes too far. Well, obviously there's some practical difficulties with any of these things, and they can all be circumvented. I mean, no matter what kind of restriction you put on somebody, unless you're going to lock them up or tell them they can't leave a particular place or make sure they're not near a cell tower. So I'm not sure that you can actually come up with a set of restrictions that would at least address the concern that they might be avoided at some juncture. I guess my point is more that he was caught violating because he just had an iPad. And a blunt restriction like that, one reason to have it is it's relatively easy on a probation search to find that someone's violated it. You're suggesting some much more finely tailored ones, but if we're allowing them to have a computer, there's a good argument for it, but then how are we sure whether he's using the computer for certain uses and not others, especially if the filtering is imperfect? I mean, there's a reason why the district court was thinking about a rough-and-ready solution. Is there anything you can tell us that would give us some more assurance about the administrability of more finely tailored remedies? Well, certainly if there is in place, as there was here, a monitoring and searching condition, which allows the probation office, and by the way, the conditions within the order are actually inconsistent. One place it says, with reasonable suspicion, and another place it just says you can come in and take your stuff and search it. Fair enough, but the question that I think Judge Beavis' question goes to is when you have a person who is a recidivist, right, and you think that you have structured some conditions that would bring him into compliance, isn't your next logical step a complete ban for some period of time because he has shown an inability to comply with whatever set of conditions you've set? Well, a complete ban could be implemented in the form of a conditional one. That's what a lot of these cases dealt with. This is fairly much an outlier in terms of saying you can't ever use it. And one of our cases imposes a temporary complete ban for a period of time. I believe there might be circumstances where that would be appropriate. I think obviously the district court would have to make that determination in the first instance. As it turns out, Mr. Holina is due to be released here shortly, so they may have that opportunity. What about a ban that would limit his use of the computers at the U.S. probation office? So if he was doing job searches or other sorts of legitimate computer use, but he had to use a computer at U.S. probation. I think that sort of ban might be appropriate, at least in the context of a shorter period of time. So it may be that for a year or two, your Internet usage to the extent that it's not work-related and doesn't even want to work, you've got to come into the probation office and use the computer there. I don't know whether that makes it any easier for the probation office or not, and there are still certain ways he could circumvent that. He could go to a local library, for that matter, and probably circumvent it. But that would be one way, obviously, of addressing at least some of those concerns. We asked you to take a look at Packingham. I think looking at it, probably the dict is more important to your overall point, but as you view Packingham, do you believe it's in conflict with our own jurisprudence, most recently in Albertson or any of the others? Actually, no. We talked about it earlier. I think, actually, this Court's jurisprudence anticipated Packingham to a large extent, and we think it has application, just the reasoning of it, for three particular reasons. One, the Court's reasoning in that case was addressing a sweeping restriction. It actually had a few more exceptions than the one we're in front of you on, but the Court's concern was with the sweeping restrictions that encompass both lawful and unlawful speech. We think that would apply here, that this kind of a restriction would encompass both lawful and unlawful speech. Secondly, the standard is actually fairly close, so whether it's narrowly tailored to serve a substantial governmental interest or whether in our discourse's jurisprudence, whether it's reasonably tailored to ensure that there's not an unnecessary encroachment on a liberty interest. And at the end of the day, you sort of end up in the same place. If you're using those two standards, you simply take a look and just see whether this First Amendment interest is being unnecessarily encroached upon. So we think the reasoning from Packingham would have application at least as far as that goes, and it doesn't alter the landscape or represent a sea change to simply bring us to the fore what the Court had anticipated in its earlier cases, both in Crandon and Volcker. What do you make of the Brock opinion out of the D.C. Circuit? That case is different for a couple of reasons. Most notably, it wasn't a lifetime ban, so they just simply didn't address Packingham's application because the ban wasn't for life. Here, it is true that Packingham was a post-custodial case, and so it represented a permanent restriction, but that's the same thing that would apply here because at present, Mr. Holina's situation is lifetime, so just like the restriction in Packingham, it would be permanent. And for those reasons, I see my time is up. I have another question to follow up on that. Is there any circumstance that you can contemplate in which, despite Packingham's dicta, a lifetime or longer period as was faced in Albertson would be appropriate? So, for instance, Mr. Holina's noncompliance has occurred on two occasions, substantial. He's about to come out, let's say it was two more times. I'm trying to figure out what the boundaries of the First Amendment rights are in this context. I don't read necessarily Packingham to say there will never be a circumstance in which a substantial ban is appropriate. Just as a general matter, when you're thinking about the integral nature of the Internet and social media in our lives, it seems impractical, but there's got to be some point in which, yes, that would be appropriate, or maybe you disagree with that proposition. Well, I guess there might be some hypothetical situation in which a lifetime ban would be appropriate. In my view, for what it's worth, it would have to be somebody coming out and basically committing the same sort of offense against a minor while using a computer as opposed to technical violations which involve accessing the Internet when he's not otherwise supposed to do so. Thank you. Thank you. That's it. Thank you. Thanks. Good afternoon. May it please the Court. Carlo Marchioli from the United States. I want to begin by addressing the second issue that Mr. Holina has raised, and specifically to pick up on a point that the government addressed in its brief about the apparent inconsistencies in the district court's imposition of the Special Conditions Act following Mr. Holina's second revocation. In the government's view, the best reading of the computer-related ban in Special Condition 11 is that it's a ban on computer usage subject to approval by the probation office. If we're not sure, why shouldn't we just remand? It's confusing. It's inconsistent. It makes sense to clean it up now rather than to wait for squabbling over which of the terms he's violated. There's conflict in there. I think your own brief gestures towards all but concede that there's a contradiction that you're having to explain away now. So why don't we just send it back at least for that? I think a limited remand, as you're explaining, Judge Bubas, is one option certainly. But I think given the entirety of the special conditions, it seems clear what Judge Graham was getting at. And the interpretation that I have offered is consistent with what Judge Kosick did after the initial sentence was imposed and then after the initial revocation of supervised release. The interpretation that we're proposing gives at least some effect to some of the other special conditions, the special condition about allowing for the computer monitoring software to be installed, the special condition about limiting Internet access except for reasons approved by the probation office, and the special condition that allows for periodic and unannounced searches of the computer. Can I ask, help us to understand whether in this ban or we wait in a clarified ban, am I right to read this language as apparently applying to a computer that isn't connected to the Internet or a dumb phone? Because those look like they're within the terms of the supervised release conditions. Your Honor, just going from the express language of the condition, I agree that it would apply to a computer not connected to the Internet and potentially not a smart phone. How are those at all tailored? How are those at all related to the offense or the danger, the need to protect the public from Mr. Helena? I have a couple of responses to that. First, if the court adopts what I think is the perfectly reasonable interpretation of the ban, which would allow for the probation office to approve certain types of computer usage, the probation office could clearly approve the types of computers that aren't connected to the Internet or a rudimentary cell phone. Additionally, Judge Bevis, during your questioning of Mr. Ulrich, you mentioned that especially given Mr. Helena's recidivist nature, a ban that doesn't require the probation office to engage in constant monitoring of him and allows for easy administration by precluding his possessing any type of computer is perfectly appropriate in these circumstances. What does that mean for filtering? What is your understanding of the efficacy of the filtering that's available and could that filtering extend to smart phones and the like? What are the alternatives to a complete ban on devices? I don't have enough information standing here to really describe the efficacy of the filtering software. That seems like it's a reason for remand then. That seems like something where we need the district court. We're not in a position in the first instance to find facts on this or to ask the probation office these questions. It seems like the district court could do that, should do that. But I think if the court adopts the interpretation that I've proposed, a qualified ban which is similar to bans that this court has addressed in other cases, which allows the probation office to approve certain types of computer usage, then the probation office, understanding the limitations of the monitoring software, can allow Mr. Helena to use certain types of computers. So if I'm understanding you correctly, you think that a complete ban of any type should be off the table and a complete ban for a period of time should be off the table, but that a qualified ban monitored by the probation department would be appropriate? I think that's the best interpretation of what the district court was doing here, and I think that that is appropriate. But we're just guessing now. I go back to what Judge Bevis said. We would just be guessing as to the district court's intention, particularly in light of the language of Condition 11. But I think if the court interprets Condition 11 as being a complete ban, that renders meaningless at least a few of the other special conditions. Which is why we need guidance. Well, just like this court in interpreting statutes. Which is why it's inconsistent. To borrow from the statutory interpretation context, I think the court can do something similar here, try to give effect to each condition that was imposed, especially given the fact that the interpretation that I proposed is consistent with what the prior judge who handled most of the case said. So the district's essence is your proposal, a lifetime ban with the exception of computer use proctored by probation? That's correct, Your Honor. And how is that consistent either with Albertson or with Albertson now looking through the lens of Packingham? So the standard that this court has announced when judging the substantive reasonableness of a condition like this is whether no other court would reasonably impose that same condition. And I feel like the lifetime ban, given the facts of Mr. Helena's underlying offense and the recidivist conduct that occurred after he was released from prison, support that type of ban. And I think it's also telling that Mr. Helena did not challenge a lifetime qualified ban following the initial sentence and then following his initial supervised release revocation. Most of the cases in our jurisprudence in which there was either a ban suggested for life or for a period of years involved a defendant who used the computer in some way to either perpetrate harm or engage in harmful conduct towards others, et cetera. I mean, I think we can see from the facts here that with regard to the recidivist conduct that's been violations of supervised release, that's not the case. So why is this in particular a case in which a lifetime ban would be appropriate when we've had cases in which the conduct engaged in was deleterious to others yet a lifetime ban was not appropriate? The facts of this case are much more egregious than Albertson and the other cases where this court has overturned lengthy bans. And there are a couple of reasons for that. First, in Albertson, and I think in all the other published cases where this court has overturned a ban, we're talking about child pornography offenses. Certainly very serious, but this court has made clear to distinguish child pornography offenses from the type of conduct that Mr. Halita engaged in, attempting to induce a minor to engage in a sexual activity. Let's talk about the purposes of punishment, 3553. 3583 incorporates all of them except for retribution. So we have to worry about protecting the public, which we've talked about, preventing future crime, deterring. But we also have to worry about rehabilitation. And one of the things that's likely to reduce his risk of committing more crimes is if he gets a job. These days it's very difficult to get a job without going on monster.com, using LinkedIn, the bunch of websites that are involved in it, certainly at least preparing a resume. So your broad ban, unless the probation approval process works flawlessly, which I don't think we can trust, could cut against that. It does seem like a narrower ban that could carve out just the use of the Internet for clearly work purposes with no children involved would be helpful. On the other hand, social networks, sites involving children, seem very much on the other end of the line. Now, if we're going to remand, if we're going to draw some lines, help us to think through what the remand order or suggestions of the district court order look like, what kinds of fact-finding you think the district court would engage in, to help draw some lines not only on time but on scope of the kinds of things he should and shouldn't be able to do, why you think that prior approval from the district court is good enough versus just unannounced searches. Help us to draw some lines here. I would ask the court not to draw too narrow of lines in this case, and that goes back to the underlying conduct that Mr. Halina was engaged in, conduct that was actually directed at a minor, in this case an undercover agent, but nonetheless Mr. Halina thought he was communicating with a minor. That's different from the child pornography context. We agree that's off limits. What would be possible? Consistent with what J.D. Bevis just suggested, it's very difficult to find work these days unless you have access to a computer. Would work-related searches be in bounds? I think based on the interpretation I have offered, the probation office could authorize those type of work-related searches. Again, given Mr. Halina's history and his underlying offense and the fact that he violated multiple times and violated so quickly after being released, countenances against really allowing him unfettered access, subject just to his own honor system-type representation to the court, that he's doing things for the appropriate purpose. We get that, but what I'm asking you is what would be acceptable? If we were going to send this back to the district court and say, we encourage you to consider the following in terms of restrictions, what would you include? Permissible conduct. I would ask the court, if it were to remand, to essentially have the district court impose the condition that I've proposed the court interpret. Let's say we disagree. Let's say we think it needs to be tailored more narrowly, at least in terms of scope. Whether or not in terms of time is a different issue. In terms of scope, I'll redraw some lines. These are the kinds of things that potentially put children at risk. These are the things where the district court could well find that this is part of protecting the public. Help us to draw some lines. I think employment-related searches and purposes would be an appropriate exception in this context. Standing here right now, I can't really think of additional. How about shopping on Amazon? ESPN. Getting rides on Uber. Without getting to that level of specificity, I think that would be difficult. I think it's difficult for a court to carve out exceptions that would include some of the websites that you're mentioning without also allowing Mr. Helina to have access to numerous other types of websites that are frequently accessed by minors, and minors are frequently engaging in communication on those websites. What if he had to come to the probation office and access the computer there? I think that's an option. I don't know about the facilities and the capability of the probation office to accommodate that type of conduct. I just want to go back. When you're talking about drawing lines, I think it's important for the court also to consider that, based on this court's case law, district courts are left with very broad discretion in this area. That's one key difference between the argument that Mr. Ulrich made in his opening brief to this court about the statutory standard and the Packingham argument. In Packingham, the court, I think, ultimately applied intermediate scrutiny. It reserved the question about whether strict scrutiny would apply in that context. But even intermediate scrutiny, I think, is very different from the standard that this court has said it applies when reviewing special conditions of supervised release. When you put Packingham in context, I think what you take away from it is that there's got to be a really good reason why you want to narrow the scope of someone's access to something that is so integral, so intertwined into our modern life. So what myself and my colleagues want to hear is, is there anything other than the obvious, like clearly any sites that have anything to do with children, pornography, this and that, clearly out of bounds? But other than that, sure, we can remand and say that. But other than that, what should we be either thinking about or looking at? Because it would seem that without something along those lines in mind, it would ab initio be overbroad and it would be violative of both Packingham and then our specific jurisprudence. I would also ask the court to consider social networking type sites, of course, conscious of the fact that Packingham found that the North Carolina statute was overly broad. So again, I think you do run into a line drawing problem there. I'm trying to engage in the dialogue with the court, but I think it's important that that was a First Amendment case applying constitutional intermediate scrutiny, which is very different from the statutory standard of review that this court typically applies to special conditions. We've got a waiver issue, but if we don't find it waived and we send it back anywhere on the statutory grounds, district court is going to have to grapple with the Packingham issue. So it does seem like we ought to think about an integrated way of assessing the statutory factors in light of the constitutional concerns because of the deprivation of liberty involved. We don't necessarily have to apply strict scrutiny. The Supreme Court hasn't gone there or told us yet to do it, but we do have to think about tailoring. The tailoring might cut you some slack and it might allow you to take them off all social media, but you're not giving us a lot of help apart from employment. Maybe the district court will find that it's not administrable to slice the salami this fine, but I'm just concerned that we're willing to ban everybody from every site for life without trying something new or at least exploring it and being told a reason why it's unfeasible. Can I continue, Your Honor, in response to that statement? Another key difference between Packingham and what you have here is, again, based on the D.C. Circuit in Rock, the D.C. Circuit pointed out that Packingham is dealing with post-custodial situations. It's very different from what you have here. The statute 2242 that Mr. Helena violated would have allowed his incarceration for life. I'm not saying a life sentence would have been substantively reasonable, but I don't think that had he been sentenced to life in prison, he would have been able to bring a First Amendment challenge to that. And so a fortiori, he shouldn't be able to bring a First Amendment challenge to a less restrictive term of supervision, supervised release in this case. On the waiver argument, one other thing I want to point out about the waiver-type issue is, because it wasn't even raised in the district court, this court's review would only be for plain error. I don't think, even if there is a potential First Amendment problem here, that the error is clear and obvious. And Crandon, this court, rejected a First Amendment claim similar to what Mr. Ulrich is now trying to make in light of Packingham. And so I don't think there's really – I think there is reasonable dispute about whether the First Amendment even applies in this context, and Rock is a great indication of that just from about a year or so ago. If the court doesn't have any other questions that I would just ask the court. Can you just wait one second? I just want to see whether I have time for one more question. Absolutely, Your Honor. Just one second.  Thank you. Thank you, Your Honor. Just very briefly on the last point that the government made, which was there was a waiver in the district court. Actually, counsel on pages 181 through 182 raised this court's cases relative to Internet usage prior to making the objection at the end of when the court imposed the lifetime supervision. It wasn't specific, but it did point out that this court addressed this issue in a number of other contexts. Secondly, in terms of reforming the conditions, the special conditions, the government had said in their brief the United States v. Underwood, which is an unpublished decision, but that's a little bit of a different circumstance because there the oral pronouncement was different than the judgment. And in that case, the oral pronouncement controls. And for those reasons, we think the court should remand. Thank you. Okay, thanks so much. Counsel, are you coming back? I'm just going to grab my notebook. Okay, grab your notebook. Counsel, thank you for the arguments. We'll take the matter on.